THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3123-BO

| | |
|---|---|
| SHAUN ANTONIO HAYDEN, | ) |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| PAUL G. BUTLER, | ) |
| Defendant. | ) |

COMES NOW Defendant Paul G. Butler, Jr. and responds in opposition to the motion for summary judgment of Plaintiff Shaun Antonio Hayden, contending that Hayden's motion for summary judgment should be denied and Butler's motion for summary judgment (D.E. 36) should be granted.

This case presents two questions:

1. Is Hayden, an inmate in the custody of the State of North Carolina who was convicted as a juvenile and sentenced to life with the possibility of parole after 20 years, constitutionally entitled to a "meaningful opportunity to obtain release" under the authority of *Graham v. Florida*, 560 U.S. 48 (2010)?

2. If the answer to the above question is "yes," has the State of North Carolina provided Hayden a "meaningful opportunity to obtain release"?

The answer to the first question is "***no***". *Graham* is not applicable to Hayden's case because its holding is specifically and repeatedly limited to juvenile offenders who were sentenced to life without parole, which Hayden was not. The answer to the second question is "***yes***." Despite the lack of constitutional mandate, Hayden has received and will continue to

receive a meaningful opportunity to obtain release through periodic parole consideration by the North Carolina Post-Release Supervision and Parole Commission.

I. *Graham v. Florida* **Does Not Apply To Juvenile Offenders Who Have Received Parole Consideration.**

Hayden's repeated citation of *Graham* in support of his motion for summary judgment is unavailing given the case's narrow holding. Hayden quotes *Graham* as saying, "A 16-year-old and a 75-year-old each sentenced to life . . . receive the same punishment in name only." (D.E. 31 at 10, ellipses in original.) In reality, this quote from *Graham* reads, "A 16-year-old and a 75-year-old each sentenced to life ***without parole*** receive the same punishment in name only." *Graham*, 560 U.S. at 70 (emphasis added). The excised two words are central to the case's holding and conclusively establish that it has no application to Hayden's case.

The holding in *Graham* is explicit and limited. "This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of ***life without parole***." *Graham*, 560 U.S. at 74 (emphasis added). *See also Id.* at 82: "The Constitution prohibits the imposition of a ***life without parole*** sentence on a juvenile offender who did not commit homicide." (Emphasis added.) Hayden provides the Court with no authority, from any jurisdiction, for the application of *Graham* to cases where, as here, the juvenile offender has been afforded parole consideration.

II. **North Carolina's Parole Consideration Process Does Not Violate Hayden's Constitutional Rights.**

The Fourth Circuit has made clear its preference for deference to state parole decisions. *Vann v. Angelone*, 73 F.3d 519, 521 (4th Cir. 1996). The North Carolina Court of Appeals has shown similar deference in *In re Stubbs*, ___ N.C. App. ___, 754 S.E. 2d 174 (2014).

2

In *Stubbs*, an inmate who in 1973 was sentenced as a juvenile offender filed a motion for appropriate relief with the state trial court, asserting that his sentence of life with the possibility of parole for second-degree burglary was unconstitutional. *Stubbs*, 754 S.E. 2d at 176. The trial court held that given that the defendant had served nearly forty years in prison, his life sentence was unconstitutionally excessive under evolving standards of decency and under the Eighth Amendment. *Id.* The State appealed and the Court of Appeals reversed, holding that "defendant's outstanding sentence of life in prison with possibility of parole for second-degree burglary, while severe, is not cruel or unusual in the constitutional sense." *Stubbs*, 754 S.E. 2d at 182 (*citing State v. Green*, 348 N.C. 588, 603, 502 S.E. 2d 819, 828 (1998)). In so holding, the court noted that the North Carolina General Assembly "has created by statute a Post-Release Supervision and Parole Commission . . . [a]s a means of obtaining release from incarceration." *Id.*, 502 S.E.2d at 181. It further noted that "[c]riminal sentences may be invalidated for cognizable legal error demonstrated in appropriate proceedings [but] in the absence of legal error it is not the role of the judiciary to engage in discretionary sentence reduction." *Id.*, 502 S.E.2d at 181 (quoting *State v. Whitehead*, 365 N.C. 444, 448, 722 S.E. 2d 492, 496 (2012)). As further support of its holding, the Court quoted the U.S. Supreme Court regarding the evolution of Eighth Amendment standards:

> Perhaps . . . time works changes upon the Eighth Amendment, bringing into existence new conditions and purposes. We all, of course, would like to think that we are moving down the road toward human decency. Within the confines of this judicial proceeding, however, we have no way of knowing in which direction that road lies. Penologists themselves have been unable to agree whether sentences should be light or heavy, discretionary or determinate. This uncertainty reinforces our conviction that any nationwide trend toward lighter, discretionary sentences must find its source and its sustaining force in the legislatures, not in the courts.

*Stubbs*, 502 S.E. 2d at 182 (quoting *Rummel v. Estelle*, 445 U.S. 263, 283-84, 100 S. Ct. 1133, 63 L. Ed. 2d 382, 397 (1980) (citations and quotations omitted in original)).

Similarly, in light of the lack of any constitutional entitlement to parole, discretionary release on parole must likewise find its source and its sustaining force in the legislatures, not in the courts. In North Carolina, parole is a purely discretionary decision in the exclusive purview of the Parole Commission. Not only does the Commission have sole authority to grant parole (N.C.G.S. § 143B-720), it is explicitly authorized by statute to "refuse to release on parole a prisoner it is considering for parole" if it concludes parole is inappropriate under one of four statutory criteria. N.C.G.S. § 15A-1371(d). Even if an inmate was convicted as a juvenile, service of a lengthy sentence does not offend constitutional safeguards, so long as the inmate has at least the opportunity for parole. *Stubbs*, 754 S.E. 2d at 182.

Hayden alleges that, in North Carolina, "[w]hen juvenile offenders, like plaintiff, are considered in the same way as adult offenders, they are systematically disadvantaged." (D.E. 31 at 11.) But Hayden supplies little proof of this sweeping assertion, and what proof he does offer does not support this contention.

First, Hayden contends that the Parole Commission gives offenders who were convicted as juveniles the same consideration it gives adult offenders. (*Id.*) He does not explain, however, how this disadvantages them. At most, it fails to ***advantage*** them, which is not the same thing.

Second, Hayden contends that "juvenile offenders are disadvantaged in the parole process because their young age at the time of their offense necessarily means they will serve more years in prison before reaching the average age of a paroled inmate," relying on the report of his designated expert, Bryan Gilbert Davis[1]. (D.E. 31 at 5; *see also* D.E. 31 at 10: "Thus, the State's parole process actually disadvantages juvenile offenders because it takes them more years of

---

[1] In rebutting Hayden's erroneous interpretation of the report of his own designated expert, the Parole Commission does not concede that the author, who possesses a Bachelor's degree in History and Asian Studies and who has not yet completed a Master's degree, qualifies as an expert in any event.

4

incarceration to get to the age at which North Carolina tends to begin to seriously consider parole.")  But Davis's report merely establishes an average age for parole, and nothing more.

Regarding the age of parolees compared to the age of non-paroled inmates, Davis states:

> [P]arolees are, on average, older than non-paroled inmates, with an average and median age of 59 and 58 years old, respectively.  Meanwhile, non-paroled offenders have a median and average of 53 years old.  Thus it does appear that inmates who are older are, on average, more likely to be granted parole.  It is also likely that this difference could be accounted for by inaccuracies in the release times due to the lack of distinction between parole dates and parole termination dates.

D.E. 31-3 at 8.  Davis contends the data shows "the trend of paroled offenders being comparatively older on average." *Id.*

Davis's conclusion is that paroled offenders are, on average, older than non-paroled offenders.  This statistic, without more, offers no support for Hayden's contention that juvenile offenders are disadvantaged in the parole process.  Hayden asserts that, having come into prison earlier, he will necessarily have to serve more years before reaching the average age for parole of 58 years old.  This seems self-evident – the younger any offender is upon entry to the system (juvenile or not), the more years lie between him or her and the age of 58 – but, again, it does not establish any disadvantage.

What Davis's report does ***not*** reflect is the average age of parole for ***offenders incarcerated as juveniles***.  It also does not reflect the percentage of overall prison population, much less parolee population, that is made up of juvenile offenders.  Thus Davis's innocuous conclusion that paroled offenders are on average older than non-paroled offenders tells the Court exactly nothing about the likelihood that Hayden, or any similarly situated offender, will make parole before or after the age of 58. By way of example:  Assume the system is made up of only ten offenders, two of whom came in to the system as juveniles.  Assume that the eight "adult"

offenders were paroled at the age of 60, while the two "juvenile" offenders were paroled at the age of 30. Simple math will disclose that the average age of parole for all ten inmates is 54 years old. But this data tells us nothing about the average age of parole *for juvenile offenders*. It would be insupportable to conclude that the juveniles had been "disadvantaged" based solely on the average age of all parolees. Further, it is self-evident that the smaller the percentage of juvenile offenders in the population as a whole, the less impact they will have on the overall average. Thus, when the percentage of juvenile offenders is small, their impact on the overall average age will likewise be small.

In the case at bar, Hayden has not provided the Court with any data regarding the average age of parole for juvenile offenders. He has not provided the Court with data regarding what percentage of overall offenders came in as juveniles. Because this data is lacking, there is no basis to draw any conclusions regarding the treatment of juvenile offenders for parole purposes based solely on the average age of the paroled population as a whole. Certainly this minimal data does not point to any "disadvantaging" of juvenile offenders by the parole system.

**III. Hayden Has Received A Meaningful Opportunity To Obtain Release Through The Existing Parole Consideration Process.**

Hayden attempts to avoid the inapplicability of the holding in *Graham* to his own case by contending that "absent some meaningful parole process . . . [Hayden's] life sentence is *de facto* one of "Life Without Parole" – because he will never be granted the opportunity to obtain release by demonstrating his increased maturity." (D.E. 31 at 12.) But this is precisely what Hayden cannot prove: That because he has not been granted parole to date, he necessarily never will be.

The Court in *Graham* was careful to reemphasize that an ***opportunity*** to obtain release did not ***guarantee*** release:

> It bears emphasis . . . that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Graham*, 560 U.S. at 75. States cannot make that judgment "at the outset" – they cannot, in other words, sentence a juvenile offender to life with no possibility of parole. Again, this is not the sentence Hayden was given or is serving. His ***opportunity*** to receive parole is undeniable.

So Hayden must argue that the opportunity, while present, is not meaningful. The Federal Court should decline Hayden's invitation to substitute its own judgment for the judgment of the Parole Board regarding Hayden's suitability for parole. The degree to which Hayden asks the Court to get involved in the minutiae of such a decision is underscored by his provision to the Court of his psychological risk assessment (D.E. 31-5) and parole case analyst report (D.E. 31-4). Hayden takes issue with the parole case analyst's conclusions and, presumably, invites the Court to do the same. But far from showing a perfunctory or meaningless process, these materials underscore that the parole consideration given to Hayden was and is meaningful. It is not based merely on "a summary of the offender's prison file," as Hayden asserts (D.E. 31 at 1; 9), but on a wealth of material including parole case analyst reports and prison risk assessments.

Even if the Court were inclined to delve into the minutiae of the Parole Board's decision, once again the materials Hayden provides the Court do not support the contention he makes. In this instance, Hayden points out that a 2007 risk assessment concluded that he might always require supervision. (D.E. 32-5 at 3.) He further notes that the parole case analyst in 2014 cited this risk assessment when recommending that he be denied parole. (D.E. 32-4 at 8.) He

7

therefore concludes that "a parole case analyst has actually recommended against plaintiff's parole *because he has been in prison since he was so young*." (D.E. 31 at 11 (emphasis in original).) But Hayden fails to point out that in November of 2010 "DOP [Division of Prisons] completed another risk assessment which found him to be an ***unacceptable risk*** for unsupervised access to the community." (D.E. 32-4 at 7-8 (emphasis added).) Why he believes the parole analyst recommended against parole based on his age, as opposed to on the conclusions of the more recent risk assessment, is not explained. The documents themselves underscore, however, that contrary to Hayden's larger contention, parole determinations are ***not*** merely rote votes undertaken based on review of the prison file with no meaningful consideration.

**IV.    The Principle of Sovereign Immunity Means That This Court Lacks Authority To Grant Hayden The Equitable Relief He Seeks, Which He Is Not Entitled To In Any Event.**

Finally, the Court should deny Hayden's motion for summary judgment both because Hayden has not demonstrated his entitlement to the equitable relief he seeks and because the Court lacks the authority to grant Hayden his requested equitable relief in any event.

A suit challenging the constitutionality of a State official's action is not one against the State and the Court therefore may grant declaratory or injunctive relief to address the official's conduct. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102, 104 S. Ct. 900, 909, 79 L. Ed. 2d 67 (1984), *citing Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). But this exception to Eleventh Amendment immunity, originally articulated in *Young*, has not been given "an expansive reading." *Id.*; *Edelman v. Jordan,* 415 U.S. 651, 666, 94 S. Ct. 1347, 1357, 39 L. Ed. 2d 662 (1974). Indeed, interpreting *Young* to permit a federal court action to proceed in every case where prospective declaratory and injunctive relief is sought "would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment

immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 270, 117 S. Ct. 2028, 2035, 138 L. Ed. 2d 438 (1997).

> The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Id.* Moreover, in order to invoke the Court's equitable powers, a plaintiff must demonstrate that he has sustained an injury that is both "real and imminent," not "conjectural" or "hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) (citations omitted).

Even if the holding in *Graham* regarding a "meaningful opportunity for release" applied to Hayden, it is inarguable that he is already receiving parole consideration, and has done so for the last twelve years under the existing North Carolina parole scheme. By seeking declaratory and injunctive relief, Hayden asks this Court to mandate the revamping of North Carolina parole procedures to meet some purely subjective judgment of "meaningfulness" that is not grounded in any precedent. *Graham* itself states that "it is for the State, in the first instance," to determine how best to implement its mandate – assuming the mandate even applies. *Graham*, 560 U.S. at 74. In so stating, the Supreme Court in *Graham* acknowledged that the creation and implementation of a parole process are executive functions of the state, not tasks for the federal judiciary. Were the Court to accept Hayden's invitation to involve itself so deeply in North Carolina's parole procedures by imposing equitable relief, it would trespass upon the State's sovereign immunity. But Hayden cannot demonstrate a real or imminent injury sufficient to justify declaratory or injunctive relief in any event. Recognizing that he has no constitutionally cognizable right to have been paroled to date, Hayden must assert that he will never be paroled in

9

the future either. (D.E. 31 at 12.) It is difficult to theorize more a more "conjectural" or "hypothetical" injury than one that is only predicted to occur.

The parties are in agreement that no genuine issue of material fact is presented in this case and that summary judgment is therefore appropriate as a matter of law. But while Butler's motion for summary judgment is supported by the clear weight of relevant legal authorities and by state law, Hayden's relies upon a misreading of *Graham*, speculation regarding future events, and the hope that this Court will accept his implicit invitation to substitute its own judgment for that of the North Carolina Parole Commission. Hayden has not established that the existing North Carolina parole scheme violates his constitutional rights. No genuine issue of material fact appearing, and Hayden having failed to carry his burden of proof, Butler is entitled to summary judgment and to dismissal of Hayden's complaint.

Respectfully submitted this 24th day of November, 2014.

ROY COOPER
Attorney General

/s/ Jodi Harrison
Jodi Harrison
Assistant Attorney General
N.C. State Bar No. 38816
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6500
Fax: (919) 716-6761
E-mail: jharrison@ncdoj.gov
Attorney for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and served via the CM/ECF system the following participant:

Elizabeth G. Simpson
Mary S. Pollard
NC Prisoner Legal Services
P.O. Box 25397
Raleigh, NC 27611
Attorneys for Plaintiff

This the 24th day of November, 2014.

/s/ Jodi Harrison
Jodi Harrison
Assistant Attorney General